**UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | Case No. 09-42842-MSH |
| PAUL D. MCCARTHY | ) | |
| TACHERYN A. MCCARTHY | ) | |
| Debtors. | ) | |
| | ) | |
| STEWART TITLE GUARANTY COMPANY, | ) | |
| Plaintiffs | ) | Adv. Pro. No. 10-4143 |
| v. | ) | |
| PAUL D. MCCARTHY, | ) | |
| Defendant. | ) | |

**MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION AND DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Stewart Title Guaranty Company, has moved for summary judgment on counts I and II of its three-count complaint in which it seeks a judgment that the debt owed to it by the debtor, defendant Paul D. McCarthy, should be excepted from discharge in Mr. McCarthy's bankruptcy pursuant to Bankruptcy Code § 523(a)(2) and § 523(a)(4) (11 U.S.C. § 523(a)(2) and (4)).  Mr. McCarthy opposes Stewart's motion and requests that summary judgment be entered against Stewart on count III of its complaint brought under Bankruptcy Code § 523(a)(6).

**Facts**

The facts are taken from those allegations in the complaint which Mr. McCarthy, who is an attorney representing himself in this proceeding, has not denied and the attachments

1

referenced in the admitted allegations. Because the complaint is neither verified nor buttressed by any affidavits in support of Stewart's summary judgment motion, the unadmitted allegations in the complaint cannot be considered at this stage of the proceeding. Arguments presented in Stewart's brief or at oral argument may be given no evidentiary significance. *Bonardi v. Bonardi (In re Bonardi)*, 2006 WL 1366942, at *1 (Bankr. D. Mass. May 16, 2006).

On or about January 26, 2001 Stewart and Mr. McCarthy's law firm, McCarthy & Malloy (the "Firm"), entered into an agreement entitled "Stewart Title Guaranty Company (Retainer Agreement)" (the "Agency Agreement") in which the Firm was designated as a limited agent of Stewart for the purpose of issuing title insurance policies to purchasers and lenders in connection with real estate transactions.[1]

The Agency Agreement provided that:

> ATTORNEY agrees to keep in force, at ATTORNEY's expense, a Lawyer's Professional Liability Insurance Policy for not less than Five Hundred Thousand Dollars ($500,000) and to furnish STEWART with a copy of said policy. ATTORNEY agrees that he will exert his best efforts to obtain an endorsement to his Lawyer's Professional Liability Insurance Policy whereby STEWART will be named as a beneficiary.

Each year, when renewing his registration to practice law with the Massachusetts Board of Bar Overseers (the "BBO"), Mr. McCarthy signed a certification that he was covered by professional liability insurance. In his memorandum in opposition to Stewart's summary

---

[1] The complaint alleges that Mr. McCarthy and the Firm entered into the Agency Agreement, an allegation that Mr. McCarthy has admitted. Technically, Mr. McCarthy is not named in the Agency Agreement. The Firm, however, is defined to include "attorney(s) practicing and licensed in the State of Massachusetts." There is no dispute that Mr. McCarthy, a partner in the Firm, falls within the definition and acted as an "Attorney" and a limited agent under the Agency Agreement.

2

judgment motion, Mr. McCarthy represents that his registration with the BBO was renewed annually on March 1st.[2]

In April 2007, Mr. McCarthy and the Firm acting as counsel to Castle Point Mortgage, Inc. closed a $500,000 loan to Andrew G. Nikas. The loan was to have been secured by a mortgage on real estate located in Ipswich, Massachusetts. Prior to the loan closing, Mr. McCarthy and the firm reviewed a February 28, 2007 title report prepared by a non-attorney employee of the Firm. At the closing Mr. Nikas, in his individual capacity, executed a mortgage in favor of Mortgage Electronic Registration System ("MERS"), Castle Point's nominee. Mr. McCarthy and the Firm issued a lender's title insurance policy insuring MERS as nominee of Castle Point. The title insurance policy provided, among other things, that Stewart would indemnify MERS and its assigns against all loss or damage resulting from the "invalidity or unenforceability of the Insured Mortgage upon the Title."

On July 15, 2009, Mr. McCarthy and his wife, Tacheryn A. McCarthy, commenced the main case by filing a voluntary petition under chapter 11 of the Bankruptcy Code. The case was converted to chapter 7 on July 15, 2010.

Stewart commenced an action in state court against Mr. McCarthy and the Firm on November 3, 2009.[3] In its amended complaint filed in the state court action, Stewart describes

---

[2] Pursuant to Fed R. Civ. P. 56(e), made applicable to this proceeding by Fed. R. Bankr. P. 7056, I may consider this fact undisputed for the purposes of this motion. As Stewart has not provided a date for Mr. McCarthy's registration renewal, I will use March 1st for the purpose of determining Stewart's summary judgment motion.

[3] The state court action against Mr. McCarthy was commenced post-petition but Mr. McCarthy does not dispute that Stewart lacked notice of the bankruptcy when the state court action was filed.

3

its action as "arising out of the negligence by [Mr. McCarthy] and the Firm in connection with the examination and certification of title in the context of a real estate transaction [the Castle Point loan closing], and for breach of the Agency Agreement between Stewart and [Mr. McCarthy] and the Firm."

The basis for Stewart's claim is an alleged claim by a third party that Mr. Nikas had no interest in the Ipswich property when he gave MERS a mortgage on it at the Castle Point closing. The assertion of the claim attacking the validity of the Ipswich mortgage caused Stewart not only to file the state court suit against Mr. McCarthy but also to make a claim against one or more of Mr. McCarthy's malpractice insurance carriers as outlined more fully below.  It was the insurer's denial of Stewart's malpractice claim, coupled with its discovery that Mr. McCarthy's malpractice insurance with American Guarantee & Liability Company ("American Guarantee") had been canceled effective February 28, 2008, that gives rise to this adversary proceeding. Stewart asserts that Mr. McCarthy's annual certification to the BBO that he had malpractice insurance when in fact his policy with American Guarantee had been canceled is grounds for excepting from discharge any debt to Stewart that may ultimately arise by virtue of its malpractice claim as a result of the Ipswich title defect.

On November 5, 2009, Stewart reported a malpractice claim against Mr. McCarthy arising from the title defect which had been asserted in connection with the Ipswich mortgage to Zurich Financial Services, an entity that appears to be an affiliate or parent of American Guarantee.  American Guarantee responded to Stewart's claim by denying coverage since the claim was reported to American Guarantee after the end of the policy period.  The American

4

Guarantee malpractice insurance policy, which was a claims made and reported policy,[4] was to have covered the period from September 2007 to September 2008. The policy was canceled, however, effective as of February 28, 2008.[5] In any case the claim, having been reported to American Guarantee on November 5, 2009, was not covered.

Navigators Insurance Company ("Navigators") wrote the Firm's professional liability insurance policy for the period November 17, 2009 to November 17, 2010. The Navigators' policy is also a claims made and reported policy. On April 30, 2010, Stewart reported a claim in connection with the title defect against Navigators and it too rejected the claim because although the claim was *reported* to Navigators during the policy period, the claim was first *made* no later than November 6, 2007 when Stewart served Mr. McCarthy and the Firm with the state court complaint Stewart had filed against them. Because the service on November 6, 2007 was before the Navigators policy period began, Navigators declined coverage.[6]

---

[4] Under a claims made and reported insurance policy, the date of the event giving rise to the claim does not control the availability of coverage. Instead, under this type of policy, the claim must both be made to the insured and reported to the insurer within the policy period. Occurrence policies, another common form of insurance, cover claims arising during the policy period without regard to when they are asserted against the insured and reported to the insurer. *Edwards v. Lexington Ins. Co.*, 507 F.3d 35, 38 n.2 (1st Cir. 2007).

[5] Mr. McCarthy also attaches to his affidavit several documents relating to the cancellation of the September 2007-September 2008 American Guarantee Policy. Based upon the documents supplied by Mr. McCarthy, there is nothing to indicate that he or the Firm was informed of the cancellation of the American Guarantee policy before his or the Firm's receipt of a letter dated May 1, 2008. Stewart has not provided any testimony or documentation to suggest that Mr. McCarthy learned of the cancellation on an earlier date.

[6] Navigators also raised Mr. McCarthy's knowledge of the claim before the beginning of the policy period as an additional ground for denying coverage.

The Navigators policy also had a retroactive feature covering only claims arising on or after November 17, 2008. Navigators denied coverage under the retroactive feature as well because the date of Mr. McCarthy's alleged malpractice was in 2007.[7]

Mr. McCarthy filed an affidavit to which he attached copies of a series of declarations pages for insurance policies running from 2002 to 2010. According to one of the declarations, American Guarantee's coverage was supposed to run from September 2007 to September 2008. As the parties agree, however, the American Guarantee policy was canceled as of February 28, 2008. Greenwich Insurance Company ("Greenwich") then wrote a claims made and reported policy covering the period from November 17, 2008 to November 17, 2009, the year before the Navigators policy. Item 8 of the Greenwich declaration lists several endorsements to the policy, including the retroactive effective date. None of those endorsements, however, is part of the record in this proceeding nor has it been established whether Stewart, Mr. McCarthy or the Firm reported the alleged malpractice arising from the Ipswich title defect to Greenwich.

Mr. McCarthy and Stewart agree that there was a gap in the Firm's malpractice insurance coverage but disagree on the length of the gap. Mr. McCarthy maintains the gap was from February 28, 2008 until November 17, 2008. Stewart alleges it was from February 28, 2008 to November 17, 2009.[8] The length of the gap in coverage is immaterial to a determination of the

---

[7] Claims arising before the retroactive effective date are not covered under a claims made and reported policy regardless of when the insured was first notified of the claim and reported it to the insurer. *Edwards*, 507 F.3d at 42 (internal citation and quotation marks omitted) ("[I]t is commonplace for issuers of claims-made policies to limit retroactive coverage by specifying a cut-off date, such as the date of the first claims-made policy issued by the insurer to this insured, so that claims based on occurrences before that date are excluded from coverage. For protection against old occurrences the insured must look to his occurrence policies.").

[8] Stewart avers that the gap runs from the termination of the American Guarantee policy until the inception of the Navigators policy. It does not, however, take into account the malpractice

motion and cross motion for summary judgment. What matters is that there was a gap.

## Summary Judgment Standard

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of a material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c), made applicable by Fed. R. Bankr.P. 7056. A "genuine" issue is one supported by such evidence that "a reasonable jury, drawing favorable inferences," could resolve it in favor of the nonmoving party. *Triangle Trading Co. v. Robroy Indus., Inc.,* 200 F.3d 1, 2 (1st Cir.1999) (quoting *Smith v. F.W. Morse & Co.,* 76 F.3d 413, 427 (1st Cir.1996)). "Material" means that a disputed fact has "the potential to change the outcome of the suit" under the governing law if the dispute is resolved in favor of the nonmovant. *McCarthy v. N.W. Airlines, Inc.*, 56 F.3d 313, 314–15 (1st Cir.1995).

The moving party bears the initial responsibility of informing the court of the basis for its motion and "identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). *Wynne v. Tufts Univ. Sch. of Med.,* 976 F.2d 791, 794 (1st Cir. 1992) (court must pierce the "boilerplate" of the pleadings, and "assay the parties' proof" to determine whether a trial is needed).

"[A] party seeking summary judgment always bears the initial responsibility of informing the ... court of the basis for its motion, and ... [must] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91

---

insurance policy issued by Greenwich covering the period from November 17, 2008 to November 17, 2009.

7

L.Ed.2d 265 (1986). "Only if the record, viewed in that manner [that is, most favorable to the non-moving party] and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." *Cadle Co. v. Hayes*, 116 F.3d 957, 959 (1st Cir. 1997).

## Discussion

Stewart's Summary Judgment Motion

Count I: Section 523(a)(2)

Stewart alleges that any debt for which it may be obligated under its title insurance policy as a result of the title defect arising from the Ipswich mortgage is one for which Mr. McCarthy will ultimately be liable to Stewart and that such debt of Mr. McCarthy should be found to be nondischargeable under Bankruptcy Code § 523(a)(2).[9] Although its complaint in this proceeding does not use the term indemnification, the concept of indemnification is the foundation for Stewart's debt. Stewart's state court complaint against Mr. McCarthy has two counts – indemnification and breach of contract. Section 523(a)(2)(A) of the Bankruptcy Code makes nondischargeable "any debt ... for money, property, services, or an extension, renewal, or refinancing of credit, *to the extent obtained* by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." (Emphasis added).

---

[9] Bankruptcy Code § 101(12) defines a "debt" as "liability on a claim." A "claim" includes the "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal equitable, secured or unsecured…." 11 U.S.C. § 101(5).

8

In *Century 21 Balfour Real Estate v. Menna (In re Menna)*, 16 F.3d 7 (1st Cir. 1994),[10] the debtor defendant had retained the plaintiff, Century 21 Balfour Real Estate, to sell his business, which it did. The buyer of the business subsequently sued the debtor and Balfour for fraud and negligent misrepresentation whereupon Balfour cross-claimed against the debtor for indemnification. Both the debtor and Balfour were found jointly and severally liable to the buyer, and the debtor was found liable to Balfour on the indemnification claim. Apparently after the buyer collected from Balfour, the debtor filed a chapter 7 bankruptcy rather than pay Balfour, leading Balfour to commence a nondischargeability action against the debtor under §§ 523(a)(2) and (6). The bankruptcy court concluded that the indemnification debt was not the type of debt which § 523(a) seeks to redress. The U.S. district court affirmed.

On further appeal the U.S. Court of Appeals for the First Circuit, noting that "[e]xceptions to discharge are narrowly construed in furtherance of the Bankruptcy Code's 'fresh start' policy and [that] the claimant must show that its claim comes squarely within an exception enumerated in Bankruptcy Code § 523(a)," *id*. at 9, reviewed the bankruptcy court's interpretation of the term "debt for" as used in § 523(a). The First Circuit agreed with the bankruptcy court that the debtor's debt to Balfour was not included in the types of debt exempted from discharge under § 523(a)(2):

> First, we underscore that section 523(a) does not employ the terms adopted in Balfour's paraphrase-"debt based upon"-nor does the statutory language remotely suggest that nondischargeability attaches to any claim other than one which arises as a direct result of the debtor's misrepresentation or malice. Moreover, Balfour cites no case in which it has been argued, let alone decided, that the nonfraud-based indemnification claim of an entity whose negligence has combined with the fraud of its joint tortfeasor to cause injury to a

---

[10] *Balfour* is no longer good law for its holding that reasonable reliance was required under § 523(a)(2). In *Field v. Mans*, 516 U.S. 59, 74-75, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995), the U.S. Supreme Court ruled that a lesser standard of justifiable reliance is required.

9

Case 10-04143    Doc 62    Filed 06/14/12    Entered 06/14/12 14:21:01    Desc Main
                     Document      Page 10 of 16
third party is nondischargeable in the bankruptcy of the fraudulent tortfeasor. Given the strict construction afforded all dischargeability exceptions under section 523(a), we have been provided with neither authority nor reason to extend the statutory language as urged by Balfour.

*Id.* at 10.

In *PaineWebber Inc. v. Magisano (In re Magisano)*, 228 B.R. 187 (Bankr. S. D. Ohio 1998), the brokerage firm which had employed the debtor was sued by banks which had loaned money to one of PaineWebber's customers based on the debtor's misrepresentations as to the amount of funds in the customer's PaineWebber account. PaineWebber, which settled its litigation with the banks, obtained a judgment against the debtor for indemnification or contribution. The debtor then filed bankruptcy and PaineWebber brought a nondischargeability action based on §§ 523(a)(2) and (4). The court noted that:

> 11 U.S.C. § 523(a)(2)(A) is normally asserted by a creditor claiming that a debt is excepted from discharge due to the fact that the debtor defrauded *that specific creditor,* and that specific creditor loaned money or extended credit to the debtor as a result of the debtor's fraud or false representation. Under those circumstances, the debtor wrongfully obtains money from the defrauded creditor, and § 523(a)(2) is asserted to preclude the debtor from benefitting from the money wrongfully obtained. This case is different. Here, Magisano did not obtain any funds from the Banks. The proceeds from the fraud flowed to [PaineWebber's customer], not Magisano.

*Id.* at 192-93 (italics in original).

Section 523(a)(2) does not extend as widely as Stewart would like. As the Supreme Court has instructed, "[o]nce it is established that specific money or property has been obtained by fraud, ... 'any debt' arising therefrom is excepted from discharge." *Cohen v. de la Cruz,* 523 U.S. 213, 218, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998). Stewart has failed to articulate what money or property Mr. McCarthy received as a result of his alleged fraud. This is because there

10

was none.[11] The only money or property paid in this case is the money Stewart paid or will pay to Castle Point, its insured under the lender's title insurance policy. This payment has nothing to do with Mr. McCarthy's alleged fraud. Rather it is based on Mr. McCarthy's negligence in issuing the title insurance policy or his obligation to indemnify Stewart.

Even assuming, however, that the debt in question here is one for money, property, services or an extension, renewal or refinancing of credit that somehow benefited Mr. McCarthy, in order to prove that debt is nondischargeable under § 523(a)(2)(A), the creditor must show that: (1) the debtor made a knowingly false representation or one made in reckless disregard of the truth; (2) the debtor intended to deceive the creditor; (3) the debtor intended to induce the creditor to rely upon the false statement; (4) the creditor actually relied upon the misrepresentation; (5) the creditor's reliance was justifiable; and (6) the reliance upon the false statement caused damage. *LaChance Financial Services, Inc. v. Gemme (In re Gemme)*, 459 B.R. 493, 498 (Bankr. D. Mass. 2011) (citing *Douglas v. Kosinski (In re Kosinski),* 424 B.R. 599, 612 (1st Cir. BAP 2010)).

Stewart's motion for summary judgment lacks any factual support that when Mr. McCarthy certified to the BBO as to his being covered by professional liability insurance he made a knowingly false statement or that the statement was in reckless disregard of the truth. The facts currently before me indicate only that Mr. McCarthy made such representations at the time of his annual license renewal around March 1st of each year. The inference to be drawn,

---

[11] In *Smith v. Cunningham (In re Cunningham)*, 163 B.R. 657, 660 (Bankr. D. Mass. 1994), Judge Hillman held that a debtor need not have obtained the money or property for himself as long as he benefited in some way from the money or property obtained by the debtor's deception. Again Stewart has failed to identify what property Mr. McCarthy obtained by his alleged fraud that benefited him.

11

therefore, is that he made the certification relevant to this dispute on or around March 1, 2008, a day after the effective cancellation date of the American Guarantee malpractice policy. The only documents in the record that are relevant to the question of whether Mr. McCarthy even knew the Firm's malpractice insurance policy had been terminated are those attached to Mr. McCarthy's affidavit. They do not indicate that Mr. McCarthy had knowledge of the cancellation before American Guarantee's May 2, 2008 letter to him. Thus there is no basis for finding that Mr. McCarthy's March 2008 certification to the BBO was made with the requisite fraudulent intent.

Similarly, Stewart's unsubstantiated and disputed allegations in its complaint about relying on Mr. McCarthy's certification to the BBO and actions it would have taken had it known of the lapse in insurance coverage do not support summary judgment in its favor on count I of the complaint even if Stewart had shown Mr. McCarthy acted with the requisite fraudulent intent. *Bonardi*, 2006 WL 1366942, at *1.

To the extent that Stewart's claim under § 523(a)(2) is grounded in its allegations in the complaint that Mr. McCarthy failed to maintain his malpractice insurance policy without any gaps in coverage as required by the Agency Agreement, such a claim is a mere garden variety breach of contract claim. Stewart has proffered nothing that could form the basis for nondischargeability of such a claim under a section that demands proof of false pretense, a false representation or actual fraud. *Gulati v. McClendon (In re McClendon)*, 415 B.R. 170, 182 (Bankr. D.Md. 2009).

For the foregoing reasons, summary judgment in favor of Stewart on count I of the complaint shall be denied. Because the alleged debt which Stewart seeks to be held

nondischargeable is not a debt "obtained by" fraud, pursuant to Fed. R. Civ. P. 56(f)(1), made applicable by Fed. R. Bankr. P. 7056, summary judgment in favor of Mr. McCarthy will enter on count I of the complaint.

Count II: Section 523(a)(4)

Section 523(a)(4) excepts from discharge debts arising as a result of "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." Stewart alleges first that Mr. McCarthy's certification to the BBO that he was covered by malpractice insurance when in fact his coverage had lapsed constituted fraud. Second, Stewart maintains that Mr. McCarthy, as its closing agent and attorney, was acting as its fiduciary in closing the Castle Point loan. Combining the two elements, Stewart concludes that any loss it may sustain as a result of the title insurance claim is nondischargeable. Stewart's reasoning is flawed.

First, § 523(a)(4) states that the fraud or defalcation must occur "while" the debtor is acting in his fiduciary capacity. Stewart has not explained and I am at a loss to imagine how Mr. McCarthy was acting in a fiduciary capacity for Stewart when he committed the allegedly fraudulent certification to the BBO. Second, Stewart has not presented any evidence that when Mr. McCarthy was acting as Stewart's fiduciary in connection with the Castle Point loan, his conduct was "so egregious that [it came] close to the level that would be required to prove fraud, embezzlement, or larceny." *Quevillon v. Bayliss (In re Bayliss)*, 313 F.3d 9, 20 (1st. Cir. 2002). In fact, Stewart's own state court complaint against Mr. McCarthy is grounded upon negligence, not fraud. Section 523(a)(4) does not turn a liability for negligence or breach of contract, even when committed by a fiduciary, into a nondischargeable debt, at least not under the standards applicable in this circuit. While attorneys are fiduciaries whose bad acts sometimes fall within

13

the ambit of § 523(a)(4), s*ee, e.g., Andy Warhol Foundation v. Hayes (In re Hayes),* 183 F.3d 162, 168 (2nd Cir.1999) (defalcation found to apply to wrongful overcharges for legal services by counsel to an estate); *Ducey v. Doherty (In re Ducey),* 160 B.R. 465, 473 (Bankr.D.N.H.1993) (the fiduciary capacity exception applied to a debt for a retainer owed by a lawyer for work he failed to perform), there is nothing on the record before me which leads to the conclusion that Mr. McCarthy's actions with respect to the Castle Point loan justify summary judgment under § 523(a)(4).

As noted in the previous discussion of § 523(a)(2), if Stewart's cause of action is one for breach of the Agency Agreement's requirement that malpractice insurance be continuously in place, its § 523(a)(4) count fails under the *Quevillon* standard.

For the foregoing reasons, summary judgment in favor of Stewart on count II of the complaint will be denied. However, because there is no conceivable connection between Mr. McCarthy's status as a fiduciary for Stewart and the misconduct complained of, in accordance with Fed. R. Civ. P. 56(f)(1), made applicable by Fed. R. Bankr. P. 7056, summary judgment will enter for Mr. McCarthy on count II of the complaint.

Mr. McCarthy's Cross Motion for Summary Judgment

Count III: Section 523(a)(6)

Section 523(a)(6) excepts from discharge debts "for the willful and malicious injury by the debtor to another entity or the property of another entity." To come within the purview of this section, the debtor must have intended the consequences of the act, not just the act itself. "[D]ebts arising from recklessly or negligently inflicted injuries do not fall within the compass of

14

§ 523(a)(6)." *Kawaauhau v. Geiger*, 523 U.S. 57, 64, 118 S.Ct. 974, 978 (1998).[12]

There is nothing in the record to suggest that Mr. McCarthy intended to harm Stewart by negligently closing a loan and then allowing his malpractice insurance coverage to lapse. Similarly, there is nothing in the record to even indicate that Mr. McCarthy intentionally canceled or intentionally allowed the cancellation of the Firm's malpractice insurance policy, let alone any allegation that these actions were undertaken with the intent to harm Stewart. There is no evidence that Mr. McCarthy even knew that his malpractice insurance policy had been canceled when he made his certification to the BBO in 2008, much less that he intended to harm Stewart by that certification.

Stewart did not respond to Mr. McCarthy's cross motion for summary judgment and in its complaint alleges only that "[b]y intentionally and wrongfully failing to keep in force Mr. McCarthy's professional liability insurance, which is required under the Agency Agreement, Mr. McCarthy committed willful and malicious injury to Stewart."[13] "[N]either conclusory allegations [nor] improbable inferences are sufficient to defeat summary judgment." *Carroll v. Xerox Corp.*, 294 F.3d 231, 236 -37 (1st Cir. 2002) (internal citations and quotation marks omitted).

Therefore, summary judgment will enter for Mr. McCarthy on count III of the complaint.

---

[12] In *Kawaauhau* the creditor, a former patient injured as a result of the physician debtor's malpractice, argued that as a matter of policy her debt should be nondischargeable because the debtor did not carry malpractice insurance. The Supreme Court rejected this argument. *Id* at 64, 118 S.Ct. at 978.

[13] The evidence establishes that the Greenwich policy was in place from November 17, 2008 to November 17, 2009. Stewart has not only failed to demonstrate that there was no coverage under the Greenwich policy, it has not addressed the Greenwich policy at all in its pleadings.

**Conclusion**

For the reasons set forth above, Stewart's motion for summary judgment as to counts I and II of the complaint will be denied. Instead, summary judgment will enter for Mr. McCarthy on counts I and II. Mr. McCarthy's motion for summary judgment on count III will be granted.

A separate order shall issue.

At Worcester, Massachusetts this 14th day of June, 2012.

By the Court,

_____
Melvin S. Hoffman
Bankruptcy Judge

cc: Michael P. Vernon, Esq.
Bartlett, Hackett & Feinberg, P.C.
Boston, MA 02110
Counsel for Stewart Title Insurance Company

Paul D. McCarthy, Esq.
North Andover, MA 01845
Pro se